## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 06 2017, 11:10 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT A.O.

Laura Raiman
R. Patrick Magrath
Alcorn Sage Schwartz & Magrath, LLP
Madison, Indiana

ATTORNEY FOR APPELLANT H.W.

Heather M. Schuh-Ogle
Thomasson, Thomasson, Long &
Guthrie, P.C.
Columbus, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

David E. Corey
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Termination of the Parent-Child Relationship of R.W. (Minor Child), and

A.O. (Mother) and H.W. (Father),

*Appellants-Respondents,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner.*

October 6, 2017

Court of Appeals Case No.
03A01-1704-JT-929

Appeal from the Bartholomew Circuit Court

The Honorable Kelly M. Benjamin, Judge

The Honorable Heather M. Mollo, Magistrate

Trial Court Cause No.
03C01-1607-JT-3818

**Mathias, Judge.**

[1] A.O. ("Mother") and H.W. ("Father") (collectively "the Parents") appeal the order of the Bartholomew Superior Court terminating their parental rights to their minor child R.W. Concluding that the trial court's order is insufficiently specific as to the basis of the trial court's decision to terminate the Parents' parental rights, we remand for the entry of proper findings and conclusions that support the trial court's termination decision.

## Facts and Procedural History

[2] R.W. was born in October 2014 to Mother and Father. In April 2015, the Indiana Department of Child Services ("DCS") received a report that Mother and Father were homeless and using illicit drugs. Mother, who was living in a homeless shelter at the time, admitted to using marijuana and methamphetamine. As a result, DCS removed R.W. from the Parents' care and, on April 9, 2015, filed a petition alleging that R.W. was a child in need of services ("CHINS"). A detention hearing was held that same day, and the trial court approved placement of R.W. with Mother's aunt ("Aunt"). The Parents denied the allegations in the CHINS petition, and the trial court set the matter for a fact-finding hearing. However, at the May 26, 2015 fact-finding hearing, the Parents admitted to the allegations, and the trial court adjudicated R.W. to be a CHINS.

[3] DCS offered services to both Parents, who progressed moderately well, at least at first. At a September 29, 2015 review hearing, the trial court approved trial

home visitation with the parents, but also ordered an increase in the frequency of random drug screening. This trial did not last long, as both Parents tested positive for methamphetamine on October 21, 2015. The following day, the trial court returned R.W. back to Aunt's care. The Parents continued to test positive for methamphetamine use and did not progress in their substance abuse treatment.

[4] On July 11, 2016, DCS filed a petition to terminate the parental rights of both Mother and Father. The trial court held an evidentiary hearing on the matter on December 16, 2016. On March 31, 2017, the trial court entered an order terminating the Parents' parental rights to R.W., which order provided in relevant part:

> 3. It was established by clear and convincing evidence that the child has been removed from her parent(s) for at least six (6) months under a dispositional decree.
>
> 4. It was established by clear and convincing evidence that the child has been removed from her parents and has been under the supervision of the Indiana Department of Child Services for at least fifteen (15) of the last twenty-two months.
>
> 5. The child, [R.W.] (hereinafter "Child"), is 2 years old . . . .
>
> 6. [A.O.] is the mother of the Child (hereinafter 'Mother').
>
> 7. [H.W.] is the father of the Child (hereinafter "Father").
>
> 8. The Child was removed from the care of Mother and Father on or about April 8, 2015, due to concerns of homelessness and substance use. During the course of the DCS assessment, the Family Case Manager met Mother and Father at a homeless shelter. Mother and Father initially denied all drug use but at a

second meeting, both admitted to marijuana and methamphetamine use.

9. A Verified Child In Need of Services ("CHINS") Petition was filed on April 9, 2015.

10. Mother and Father were in attendance at the Initial/Detention Hearing held on April 9, 2015. Mother and Father were invited to participate in a Facilitation scheduled for May 14, 2015.

11. Mother and Father participated in the Facilitation and voluntarily admitted that the Child was in need of services. The admission was consistent with the findings by DCS in its initial assessment. Mother and Father admitted to instability with housing and transportation. They acknowledged being dependent on others following a fire that destroyed their home. Mother and Father further admitted to using methamphetamine on one occasion and agreed that they were in need of court intervention to help them recover from the fire.

12. Dispositional agreements were also reached as a result of Facilitation and a Dispositional Decree was entered on May 26, 2015. The essential terms of the Dispositional Decree were similar for both Mother and Father and required each to: (1) complete a substance abuse assessment with Centerstone and complete any recommended treatment; (2) participate in individual counseling with Adult and Child and follow all recommendations; (3) participate in home-based case management with Adult and Child to assist with housing, employment, transportation, community resources, daycare and budgeting; (4) participate in supervised visitation through Adult and Child three times per week at two hour intervals and participate in additional visits as supervised by the Child's maternal grandmother.

13. To aid in the management of the case, Mother and Father were also expected to: (1) maintain weekly contact with the Family Case Manager (FCM); (2) allow access to the home; (3) maintain safe and stable housing; (4) maintain a legal source of

income; (5) refrain from the use of illegal drugs; and (6) submit to random drug screens as directed.

14. After formal removal, the Child spent approximately twenty-four (24) days with Mother and Father in a trial home visit beginning September 29, 2015. After the trial home visit disrupted, the Child never returned to the home of Mother or Father. The Child has been out of the home for approximately nineteen (19) months.

15. Mother and Father initially were residing together and working together for reunification with the Child.

16. Mother and Father were both referred for substance abuse evaluations in May 2015. Both were recommended for IOP through Centerstone. Both initially made progress.

17. Mother completed IOP, including aftercare, and provided negative drug screens.

18. Father completed IOP and was ready to begin aftercare when he had a positive drug screen for suboxone on August 13, 2015.

19. Despite Father's positive screen, Mother was viewed as a safety factor in the home and the Child began a trial home visit with Mother and Father on September 29, 2015.

20. The Child was again removed from the home of Mother and Father on October 21, 2015. Mother could no longer be the protective factor in the home as she had a positive screen for methamphetamine on October 16, 2015.

21. Father in the meantime stalled in his substance treatment progress following the positive suboxone screen referenced in Paragraph 18 above. When Centerstone attempted to discuss the positive screen, Father denied use. Centerstone went to the effort of having the screen tested a second time to confirm results. Father continued to deny any substance use. Centerstone discharged him from their treatment program as they had reached an impasse with him. There was nothing further to process or learn with the continued denial on Father's part.

22. Following the positive drug screens and the child's removal, Mother was referred to Adult and Child for a new substance abuse assessment. She completed the assessment in December 2015 and was recommended for IOP.

23. Mother was unsuccessfully discharged from IOP in March 2016 due to continued positive drug screens for methamphetamine and lack of attendance at IOP. Adult and Child was also concerned with the level of Mother's use. She reported frequent use of methamphetamine and that she had been regularly using while in the earlier treatment with Centerstone.

24. In discharging Mother, Adult and Child recommended that Mother pursue inpatient substance treatment.

25. Mother attended and completed inpatient substance treatment at Tara Treatment Center and was discharged on April 21, 2016.

26. Tara gave a "guarded" prognosis as to Mother's ability to remain sober. Mother never expressed her own commitment to long-term sobriety while at Tara and struggled to access her emotions while in treatment. Tara Treatment Center recommended that Mother enter a sober living environment, re-engage in IOP services, individual therapy, and medication management.

27. Mother tested positive for methamphetamine on a screen collected one day after her release from Tara Treatment Center. Mother also tested positive for methamphetamine on the following dates, subsequent to her release from Tara Treatment Center: July 19, 2016; July 28, 2016; August 15, 2016; September 13, 2016; September 29, 2016; October 4, 2016; October 13, 2016; November 11 2016; and November 3, 2016.

28. After completing Tara Treatment Center, Mother attended one IOP session through Centerstone, and has not returned.

29. Mother never acknowledged her substance use to DCS. After every positive screen, she denied use. Even after the child was

removed the second time from the home, Mother was belligerent in denying any substance use.

30. Following the Child's second removal from the home and Father's unsuccessful discharge from Centerstone, Father was next referred to Adult and Child for a substance abuse assessment. Father was recommended for IOP and was unsuccessfully discharged on December 22, 2015, for lack of attendance.

31. On March 28, 2016, FCM provided a referral for a 21 day, in-patient substance abuse treatment program at Tara Treatment Center for Father. Father completed the program on May 20, 2016.

32. After completing the in-patient program, FCM provided a referral for Father to continue IOP treatment at Centerstone. Father started IOP on June 16, 2016. Father had two positive methamphetamine screens in June and started missing classes. He was required to sign a Zero Tolerance Agreement on June 24, 2016, due to missed appointments and tardiness.

33. In addition to the two positive methamphetamine screens administered by Centerstone, Father also tested positive for methamphetamine, following his completion of treatment at Tara Treatment Center: July 19, 2016; August 15, 2016; and September 13, 2016.

33. Father was unsuccessfully discharged from Centerstone with a recommendation that he complete long term inpatient substance treatment.[1]

34. Centerstone allowed Father to return to IOP services in December 2016 through an adult probation referral. Father began a term of probation on July 27, 2016 for an act of conversion. In October 2016, he admitted to his probation officer that he had used methamphetamine. Upon Centerstone completing a new

---

[1] The trial court's order contains two findings labeled as "33."

substance abuse evaluation, Father was expected to start IOP on December 12, 2016. He failed to attend his first two scheduled classes, the same week as this trial.

35. Mother and Father were in a homeless shelter at the time of the Child's first removal.

36. Mother and Father had secured an apartment by the time the trial home visit was attempted in late September 2015, as referenced in Paragraph 19 above.

37. In early April 2016, Mother and Father were again reported to be homeless. Father was living in a tent. Mother was at Tara Treatment Center and had no secure living arrangements upon her discharge.

38. At the July 2016 Court Status Hearing, Mother and Father had separated. Mother had not been able to secure housing or employment since her discharge from Tara Treatment Center. By July 2016, Father had also completed inpatient substance treatment at Tara Treatment Center but was again living in a tent.

39. Mother is still homeless. As of this trial date, Mother is living in a hotel. Mother does not have transportation. Mother requested that FCM transport her to Court for her hearing today.

40. Father's stability is dependent on his girlfriend. Father never obtained independent housing through the home-based case management service provided. Father admitted that for the last six to seven months he has been living off and on in a tent or staying with friends.

41. Following the disruption of the trial home visit in September 2015, the Child was in relative placement until April 2016. In April, the relative notified DCS and the parents that she could no longer be a permanency plan for the Child.

42. Even with the knowledge that a foster home would be sought for the Child, parents were unable or unwilling to increase their level of commitment to sobriety or stability.

43. Visitation observers note that there is an obvious bond between the Child and her parents. Unfortunately, that too has failed to encourage any greater sense of urgency on the part of the parents to change their circumstances that existed at the time of the Child's original removal.

44. The child is in a pre-adoptive home where she has resided since August 3, 2016.

45. DCS' plan for the Child is that she be adopted by her current placement. This plan is satisfactory for the Child's care and treatment.

46. The Child is happy and comfortable in the pre-adoptive home. The Child's GAL also supports adoption by the current foster parents as the permanency plan for the Child.

**IT IS THEREFORE ORDERED ADJUDGED AND DECREED:**

Termination is in the best interests of the child.

That DCS' petition for termination of Mother's parental rights is granted and that the parent-child relationship between the Child, [R.W], and her Mother, [A.O.], is hereby terminated.

All rights, powers, privileges, immunities, duties, and obligations, including any rights to custody, parenting time, or support, pertaining to the relationship are permanently terminated. Mother's consent to the adoption of the Child is not required.

That DCS' petition for termination of Father's parental rights is granted and that the parent-child relationship between the Child, [R.W.], and her Father, [H.W.] is hereby terminated.

All rights, powers, privileges, immunities, duties and obligations, including any rights to custody, parenting time, or support, pertaining to the relationship are permanently terminated. Father's consent to the adoption of the Child is not required.

That the Court shall retain jurisdiction over the Child in the corresponding CHINS case and accordingly this case is ordered closed.

Mother's App. pp. 13–18 (record citations omitted). The Parents now appeal.

# Discussion and Decision

We have often noted that the purpose of terminating parental rights is not to punish parents but instead to protect their children. *In re S.P.H.*, 806 N.E.2d 874, 880 (Ind. Ct. App. 2004). Although parental rights have a constitutional dimension, the law allows for the termination of such rights when the parents are unable or unwilling to meet their responsibilities as parents. *Id.* Indeed, the parents' interests must be subordinated to the child's interests in determining the proper disposition of a petition to terminate parental rights. *In re G.Y.*, 904 N.E.2d 1257, 1259 (Ind. 2009).

The termination of parental rights is controlled by Indiana Code section 31-35-2-4(b)(2), which provides that a petition to terminate parental rights must allege:

> (B) that one (1) of the following is true:
>
> > (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
> >
> > (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
> >
> > (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

[7] The burden is on DCS to prove each element by clear and convincing evidence. Ind. Code § 31-37-14-2; *G.Y.*, 904 N.E.2d at 1260. As Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, the trial court is required to find that only one prong of that subsection has been established by clear and convincing evidence. *In re A.K.*, 924 N.E.2d 212, 220 (Ind. Ct. App. 2010).

[8] If the court finds the allegations in a petition are true, the court shall terminate the parent-child relationship. I.C. § 31-35-2-8(a). If the court does not find that the allegations in the petition are true, it shall dismiss the petition. *Id*. at § 8(b). Indiana Code section 31-35-2-8(c) now[2] provides that the trial court "*shall* enter findings of fact that support the entry of the conclusions required by subsections (a) and (b)" to either terminate a parent-child relationship or to dismiss the termination petition. (emphasis added).

[9] Here, all parties acknowledge that the trial court failed to make any findings or conclusions with regard to the statutory requirements that must be proved before a trial court may terminate parental rights. That is, the trial court did not make any finding or conclusion that there is a reasonable probability that the

---

[2] Indiana Code section 31-35-2-8 was amended in 2012 to add the requirement that the trial court enter findings of fact. *See* Pub. L. No. 128–2012; *see also In re Involuntary Termination of Parent-Child Relationship of N.G.*, 61 N.E.3d 1263, 1265 (Ind. Ct. App. 2016) (noting 2012 amendment to require findings of fact supporting trial court's decision to either grant or dismiss a petition to terminate parental rights).

conditions that resulted in the child's removal, or the reasons for placement outside the home of the parents, will not be remedied. *See* I.C. § 31-35-2-4(b)(2)(B)(i). Nor did the court make a finding or conclusion that there is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.[3] *See* I.C. § 31-35-2-4(b)(2)(B)(ii).

[10] A trial court's findings of fact and legal conclusions are crucial to our ability to conduct a proper review, and without adequate findings and conclusions, we are unable to determine whether the court terminated the Parents' rights based on a consideration of the statutory requirements.

[11] We find this case to be similar to the one recently before us in *In re Involuntary Termination of Parent-Child Relationship of N.G.*, 61 N.E.3d 1263 (Ind. Ct. App. 2016). In that case, the trial court's factual findings were so sparse that we could not determine whether the trial court based its termination order on the proper statutory considerations. *Id*. at 1266. We therefore remanded with instructions for the trial court to enter proper findings of fact and conclusions of law to support the termination of the mother's parental rights.

[12] Here, the trial court entered detailed findings of empirical fact. But it failed to take these findings of fact and make the statutorily required ultimate findings and/or conclusions with regard to the elements DCS must prove before the trial

---

[3] The trial court did, however, make a finding with regard to the statutory requirement that there be a satisfactory plan for the care and treatment of the child. Mother's App. p. 17; *see also* I.C. § 31-35-2-4(b)(2)(D).

court may terminate parental rights. All we can discern from the trial court's order is that termination of the Parents' rights is in the best interests of the child. While termination must be in the best interests of the child before the trial court may terminate parental rights, this fact is, by itself, insufficient to support the termination of the parents' rights.

[13] Accordingly, we remand with instructions that the trial court enter findings and conclusions that comport with Indiana Code section 31-35-2-8(c) and set forth whether DCS adequately proved the elements set forth in section 31-35-2-4(b)(2).

[14] Remanded.

Vaidik, C.J., and Crone, J., concur.